Thank you. Good morning. Please call the first case of the morning. 213-1217, Village of Deerfield v. Hugh Barberdeen. Counsel, you may proceed. Good morning, Your Honors. Britt Isley for the Village of Deerfield, the appellant. Good morning, Counsel. Mr. Hannigan. As the appellant in this case, we bring our appeal because Hugh Garrity is getting a double award under Section 8D. And we believe that it's Mr. Garrity's greed, for lack of a better word, that brings us here. We're already paying him an 8D-1 wage differential, and he'll get that for the rest of his life. But in addition to that, for the same body part, he wants a Section 8D-2 man-as-a-whole award. Well, therein lies the rub. How are you defining the same body part? The same way Wilk County Forest Preserve does, which is a shoulder is a neck is a back. I believe that under the Wilk County Forest Preserve case, a shoulder is a person-as-a-whole. And so it really doesn't matter if we say that his shoulder was injured, his neck was injured, or his back was injured. It's the same thing. Your entire argument hinges on that. I think so. We would have to determine that under Baumgardner and City of Chicago, body-as-a-whole, any part of the body-as-a-whole is the same body part. Any part of body-as-a-whole is like the trunk. Compensated under 8D-2. Yes. Yes, because, I mean, these other cases, Chicago, Baumgardner, they dealt with body parts. Or in the case of Baumgardner, indulge me here, you know, the right knee. But we were talking again about 8E on the right knee. So if this, let's say this case had been brought before the Wilk County case. He would have gotten an award under 8E for his arm injury, and then an award under 8D-1 for a wage differential. Well, let's talk about Baumgardner and City of Chicago. As I'm looking at it, didn't the claimants there suffer multiple injuries to the very same body part? That's not the case here, is it? See, but I defined the very same body part. Yes. Physically, in Baumgardner and Chicago, it was multiple injuries to, in fact, the same physical body part. Correct? Correct. The right knee. That isn't what happened here, is it, exactly? In the eyes of the law, I think it is. Forget about the eyes. How about the eyes of the human body? Was it the same body part? Well, I think it's too, I think that part of it's confused, too, because he injured his left shoulder here, and then in his second accident, after he got back to work full duty, injured his left shoulder and his neck. And his lumbar spine. And his lumbar spine. But his treaters said it's a difficult differential diagnosis, treating the left shoulder and the cervical spine. And that's why I think this is a de novo review. I don't think we have to apportion it, you know, shoulder 70 percent, neck 20 percent, lower back 10 percent. It's all the same thing in the eyes of the law. So if he gets an award under 8D2, he has to elect that one or 8D1. And he doesn't want to. He wants both. So the village wants, has given him an 8D1, paying him an 8D1, and that's not enough for Hugarity. He wants more. So this can be distinguished from Baumgartner. It's probably closest to city of Chicago because that case involved a back injury and then a back injury. Both lower back. Both lower back. And his award for man as a whole was taken away from him after he got his 8D1. And in the same way, we're asking for his man as a whole award, Garrity's man as a whole award to be taken away from him because he has a lifetime annuity, essentially. He's getting his benefits. He's got a wage impairment. He can't be. But he, after the first accident, he didn't have a wage impairment. That's true. He went back to work full duty. It wasn't until he injured his cervical and lumbar spines that he had a wage impairment. I would say left shoulder, cervical, and lumbar spine, yes. And so I think this is a, I'm arguing that this should be a de novo review because the law doesn't allow a claimant to get both under 8D2. Initially you alluded to Will County Forest Preserve District case. How does that help you in this interpretation? Because it gives me the shoulder as a man as a whole. Well, didn't Will County hold that the injury to the shoulder did not qualify as a scheduled loss to the arm? Yes. Yeah. It took away the shoulder from the arm. So that's why I'm saying if it hadn't been for Will County, we'd be talking about an 8E scheduled award for the arm, which is what he had. He already had a shoulder injury, and it used to be called an arm back then. And then, and he was still allowed to get an 8D1. You don't have to elect. Once you get a, you know, under Section 8D, if you get an 8E award, you can still bring an 8D1. And by the way, the whole argument about consolidation for hearing, I don't see that, I don't know that the circuit court saw that that was such a big deal either. I think that if he had, the arbitrator had to decide on all the evidence as a whole when the case was consolidated. I suppose that Garrity, if he really wanted both, could have tried his first case, you know, the August 2005 accident first, got a man as a whole award, and then separately brought his wage differential and got a separate award. I suppose he could have done that, but he didn't. But why should it be treated differently, whether they're tried separately or consolidated? I'm sorry? Why should the type of award he gets be treated differently based on whether they're tried together or separately? Well, because I think the appellate court, and I can't cite you the case, but I mean in consolidation cases, they consider the evidence as a whole, all of the evidence. He was coming in for permanency on both injuries. Well, Baumgartner and the City of Chicago, aren't they based on really the principle that you have an indivisible injury? You know, it's the same body part. You really can't tell which accident caused his ultimate condition of ill-being. Therefore, he gets one recovery. I think that's right. And here, I mean, it's pretty clearly distinguishable. Oh, see, I respectfully disagree. I think it's not clearly distinguishable. Well, it's pretty clear that he didn't suffer an impairment of earnings after the first accident. That's true. But he did suffer an impairment of earnings after. But in terms of the body parts, I think he was still suffering from a left shoulder pain. He was treating with the same doctor for that left shoulder pain. His doctor, when he saw him the second time, Zolich or his partner, said, you know, this is a differential diagnosis between his left shoulder and his cervical spine. We're treating both. In the end, he had a cervical injury, and he also had a lumbar spine. But I look, stepping back and looking at Will County, does it matter? Because it's still a person as a whole. Well, wait a minute. If a person gets a person as a whole award because of an injury to his back and his shoulder, is it precluding getting more of a person of a whole award for a subsequent injury to one of his legs or both of his legs? A person. They're totally separate body parts. A person as a whole for the legs? Yeah. If they gave him a person of a whole for the leg, why can't they give him a person of a whole for arm and shoulder, too, in a separate award? They're totally separate body parts. Your argument, I think, only holds water if the injury is indivisible. When the injury is indivisible, then you're correct. They can't get two awards. But if the injury is totally divisible, I don't see any reason why they can't. I don't know of any case that says they can't. I don't think there's a case yet. But when you say totally, what's that? This will probably be the case. Yeah. I mean, when you say totally divisible, though, Your Honor, I think of when you say an arm, I think of an elbow. That's totally divisible from a shoulder. Well, but you can get persons of a whole award for injury to multiple body parts and a subsequent person as a whole award for an indivisible injury to other body parts. Totally separate and apart, and I don't see any reason why you can't get it. You seem to suggest that once you get persons of a whole, every person as a whole is the same indivisible injury to the same body part, and it's not. I mean, something makes up persons of a whole. Some injury makes it up. What is it? What part of his body was injured when he got the person of a whole award? Now you ask yourself a question, what part of his body was injured when he got the wage differential award? If it's the same body part and it's totally indivisible as to how much for each one, I'd agree with you. But if it's divisible, then I don't think the argument holds water. I just don't think it's clear that it's divisible. It's simply because he injured his left shoulder again. It would be a cleaner case and divisible if he had a left shoulder injury and then a low back injury. Right. I may still be arguing the same thing, though. But I think what you're saying is. Because I see it as the same body part. Once he got the wage differential and became, could not return to his normal employment, then it appears to me what you're saying is that the injury to the person of a whole is subsumed into the award of wage differential because that takes into consideration the prior injury, too. I mean, it's almost subsumed into it. And that's an entirely different way of looking at it than any of these other cases I've ever looked at. Well, I think, isn't that why the statute requires an election? I think because you could subsume one into the other. I guess I didn't think of it that way. I mean, a whole can't be any more than the sum of its parts. And once you give the maximum recoverable, meaning wage differential because you can no longer work because you've suffered injuries to your person as a whole, it occurs to me that subsumed into that may very well be all prior awards for injury to a person as a whole. You can't, a guy can't be 100% injured twice. Well, there's no credit either, is there? No. And you can't get credit. So I suppose you could get, you know, 50 of a man in one, 50 of a man, I don't know how that would, but 50 of a man in another, and it's not as if they're permanently totally disabled, even though it's 100 of a man. With man as a whole, I'm not talking about a credit or being subsumed. That's how I think of being subsumed, is taking account of these prior, like say back strains, and saying it's all part of this case. I don't think you'd have to do that. Right? This case was tried with all of the evidence for, and the petitioner asked for damages in the way of both under 8D1. He didn't want the election. He wanted both. And so that's why when you say subsumed, I don't think of it as a, I think of it more as a credit. I mean, it's 8D1 we're talking, I'm sorry, 8D we're talking about in the election that has to be made. Well, let me ask you this then in light of that. Are you saying, or is it your position succinctly that the Act prohibits two permanency awards for man as a whole, even if the current condition of ill-being is a result of two separate accidents to two separate body parts? No, you can get a man as a whole injury twice. Okay. But that's different than 8D1 and 8D2. You're talking about an 8D2 award twice. And yes, a person can get two 8D2, 27 8D2 awards, and there's no credit. Maybe the arbitrator would take into account that there have been so many injuries, but it's not like 8E where there's a credit. Here, there's an election. When a case is tried and the person's asking under 8D for benefits, that's fine. Which 8D do you want? Do you want 8D2 or 8D1? Here, he had a loss of earnings, so the proof was 8D1. And you would acknowledge there's no case precisely at point, correct? Right. I mean, your entire argument does rise or fall, though, on whether or not in Baumgartner and City of Chicago when we said, when we talked about individual, indivisible injuries to the same body part, we also included body as a whole as the same body part. Yes, because of Will County. If we don't agree with you on that. Well, I suppose if you want to fit me in that box. But I think because of Will County, I can argue this. Without Will County, I wouldn't be here. Well, and that's only because we got a shoulder injury here. I mean, if we had separate neck and lower back injuries, you'd be making the same argument, saying they're both compensated as body as a whole, therefore it's the same body part. Yes. Okay. I suppose the difficulty I'm having with this is you have a man who has been found 18.8% incapacitated as a man as a whole, and also sustaining a separate injury that entitles him, or his argument is, entitles him to a wage differential because he can no longer work. I suppose my question is, is the injury that he suffered for which he receives 18.8% of a man as a whole part and parcel of the determination that he can no longer perform his usual occupation when coupled with the injury he sustains in the second accident? So is it really an addition of the two that makes the wage differential award proper? I mean, absent the injury he suffered in the first accident, would he have been incapacitated from working his regular employment by reason of the second accident? And if the answer to that is no, then he is taking advantage in order to receive the wage differential for something he's already been paid for. And I don't think that is a double recovery. But if he would have been rendered incapable of performing his usual occupation solely and exclusively by reason of the second accident, without reference to the injuries he suffered in the first, it wouldn't be a double recovery in that circumstance. So I think the whole thing rides on the question of is it an indivisible injury? Or is it recovery for an indivisible condition, I suppose is what I'm saying. I think the facts make it too hard to make it divisible. It's very, very difficult for me to understand it. Because in one circumstance, I can see where there is no double recovery. In another circumstance, I can see where there is. And my question is, which is this case? There's no double recovery here. I think that's the answer, I think. And that's my argument. I just think that you asked what happens if he didn't have the first accident? Would he still have had the wage differential from the second? Right. I don't know that. Who's to say? Because the doctor was treating him for both and said this is a difficult differential diagnosis. Because we're talking about the shoulder that was already injured, the shoulder that was already injured a second time, and his neck and his back. Well, but he said that at one point. But ultimately he had surgery on his cervical spine. He did. And that diagnosis was reached, and it was his neck, right? Right. But I don't know that there was a finding that the neck was the cause of his wage impairment. Counsel, your time is up. Okay. Thank you. Thank you very much. Good morning, Justices Counsel. Based upon your questions, I've probably taken a chance speaking on this. However, I want to address this issue of indivisible injury. Let's understand that in February he was lifting scrap light poles and injured his left shoulder. He was treated for his left shoulder. Then in August he was on a lawn mower ducking some brush and injured his neck and his low back. The treatment immediately after the shoulder injury was only for the shoulder. He was released after about a month. He said he had problems with that left shoulder ongoing even up through the August accident. After the August accident, the accident report was filled out, and it said neck and low back. It didn't say anything about the shoulder. Now, as to whether the neck and the shoulder were involved in the second accident, that may very well be a question of fact. And the arbitrator and commission heard those facts, and what counsel has totally ignored is their own Section 12 doctor, Dr. Levin, who stated, quote, his left shoulder pathology is inconsistent with the mechanism of the injury described from his work injury in August. The facts in this case were decided by the commission, and the commission decided that they were separate injuries. Now, Dr. Zolich ended up treating just the shoulder, and he had surgery to the left shoulder, then he had overcompensation for the right, and he had findings on the right shoulder. Dr. Ross only treated the cervical spine, and he treated it with a fusion. Now, he was given a full-duty release on the shoulders by Dr. Zolich. He testified as to what he noticed about himself at the time of the full-duty release for the shoulders. He testified that he was still having those problems on the day of hearing. His wage loss differential stems from the restrictions that were imposed upon him as a result of the cervical fusion, not at all because of the shoulders. So let me try and get this straight. If the commission finds, if the facts bear out, that these were two totally separate and divisible injuries, one to a shoulder, one to a neck, he gets 18.8% for the shoulder. If it can be determined that the injury to the neck resulted in a wage differential award, irrespective of the injury to the shoulder, would have resulted in a wage differential anyway, then I can accept the argument that he should be able to recover under both, 18.8% plus the wage differential. But if the facts bear out the conclusion that the injury to the neck in and of itself would not have rendered him incapable of performing his usual occupation, then to award him a wage differential because of the condition of his shoulder and the condition of his neck would be double recovery. So now the question is, what did the commission do? Well, let's look at what the stipulation was in the very beginning of the case. I asked to consolidate. I stated, Your Honor, at this time we would like to move to have these three cases consolidated for the purpose of convenience, and I ask that separate decisions be written on each claim. Mr. Eiseley, no objection. Mr. Eiseley goes on to state, quote, separate decisions on each claim right for purpose, I guess, of the respondent. We want separate decisions as to the nature and extent of each claim. I understand this is more for convenience sake that we are consolidating the cases. Then I go on to state, if once there are three decisions and we have a dispute as to any one of the multiple decisions, we can then file separate petitions for review on any or multiple decisions. So your argument would be he gets to make the election on each one of the injuries separate and apart from the other. In other words, he can take a man as a whole on one and he can go for wage differential on the other. And it's a question of fact for the commission to decide. Okay. I can understand the argument. All right. The Bob Gardner case, I think that's also my strongest case. That's a manifest weight decision, and this Court has ruled that if the commission, and it's their determination as to permanency, you will give a great deal of substance credit for that decision and it won't be overturned unless it's against the manifest weight of the evidence. Thank you very much. Thank you, Counsel. Counsel, you may reply. Your Honors, I was looking back through my notes to see, Counsel referred to my IME, Dr. Levin, and I frankly just rely on the treating doctors. I don't have Dr. Levin's report in front of me, but I don't know that the commission, looking back through the decision, even relied on Dr. Levin's report, so maybe it's best not to. As for his argument about, again, about consolidation of cases for administrative purposes or substantive purposes, the point was the case was heard altogether, and one judge heard the whole, all three cases. And he found, by the way, on the third case there was no permanency, but I guess I'd be arguing the same thing if he had found a man as a whole on the third case, because if that is part of the same injury, is part of the same body part, man as a whole, it has to be elected between that and an 8D1, which he was awarded. So, again, the consolidation point of it, I did agree to, and we stipulated to that. That's true. But the only way I think he can get around, that Garrity can get around that, is if he had tried them separately, altogether separately, because then the evidence as a whole wouldn't have been heard by the court. Thank you, Your Honor. Thank you, Counsel, both, for your arguments in this matter. We take them under advisement. A written disposition will issue. Please call the next case. 113-3234, Jerry Campbell. Counsel, you may proceed. Good morning, Justices, Counsel. My name is Kevin Bugler, and I represent the appellant, Jerry Campbell. This is a case involving an Illinois resident who was an over-the-road truck driver and is injured out of state. And the issue is whether or not the Illinois Industrial Commission has jurisdiction over that injury. And this Court, as well as the Supreme Court, has addressed this issue. In the Mahoney case and the 2006 Supreme Court case, the place of contract for hire is the sole factor in determining whether or not the Illinois Workers' Compensation Commission has jurisdiction for an out-of-state injury. But to refine it further, it isn't just a contract, and I think it becomes the central issue in this case, is it's where the contract for hire was made. Where was the last act done necessary for the formation of the contract? Absolutely. Because there's a lot of different steps involved. Correct. So tell us where the last act necessary for the formation of the contract occurred. Well, the last act necessary was here in Summit, Illinois, and that was tanker truck training that was required to be done here at the Quality Control Center plant in Summit, Illinois, because the employer is a franchisee of quality carriers. They're exclusively hauled on behalf of quality carriers. And so there's a lot of steps that go into the hiring process. There has to be a background check. There has to be a drug test. There has to be a physical. There has to be an over-the-road test. All of that is done in Indiana, and all of that is done before the tanker truck training here in Summit, Illinois, because the employer doesn't want to go through the expense of the training if they're not going to pass a background check. Now, that makes some logical sense, but tell us what evidence or testimony establishes the last act necessary for the formation of the contract was the training in Summit? You don't have to pick my word for it or the petitioner's word for it. It was the respondent's general manager, the only one who testified. Mr. Pruden? Mr. Pruden. And he testified, and we have it cited in our brief in the record at 137. So the last thing that has to be done before someone is hired is they take the training and pass it, correct? Correct. Question, and that's done here in Illinois, correct? Yes. It's one of Quality Carrier's training centers. And we went on to refine, why is it done that way? Why is everything else done in Indiana and the last thing done here? And they said, and this is at 137, So you wouldn't allow Mr. Campbell to do any of the training in Summit, Illinois, if you didn't have any of the other documentation completed and all the reviews done because you didn't want to pay for the training, correct? Yes. So the training was the last thing that needed to be completed before Campbell was hired, correct? Yes. And that training would have been done between November 25th and December 3rd when he was hired, correct? Was he somewhat equivocal on that? Yes. Because your opponent may point to that. Wasn't he somewhat equivocal? Didn't he say, yes, but he had to come back to Indiana to complete some other paperwork or something, didn't he? No, this was the testimony. And, in fact, if we look at the paperwork, Wait a minute. Hold on. I think you're missing a step here. Okay. The arbitrator made a finding, and his finding is entirely correct. The person who gives him the test here in Illinois does not hire him. He is not hired until the person who administers the test here in Illinois notifies Indiana and then Indiana hires him. So he doesn't get hired merely because he passed. He doesn't get hired by the person who gives him the test here in Illinois. He doesn't get hired until those results are reported to the person, Purnell I think his name was, in Indiana, and then he's hired. Now, I agree with you. They let him drive a truck before he filled out the paperwork, so the paperwork is not part and parcel of the hire. He went to work before that paperwork was filled out. But the question is, is the notification to Indiana the last step necessary to be hired? And if it is, that notification went to Indiana, not Illinois. Well, the notification goes to Indiana, but then the conversation takes place when they call him up and say, when he is here in Illinois and say, fine, you've passed, you've got to call dispatch and they'll give you your first load. And that was done while the petitioner is here in Illinois is when they make that offer of employment. So you're saying it's whether or not he passes the courses or, as Justice Hoffman says, the additional step, it's contingent on being notified by quality control to the company he successfully completed it. When that act is done, it's done from Illinois, he's in Illinois and it's notified to Indiana. Right. Because he's hired at that moment and he's physically in Illinois. Right. That, to me, doesn't wash. Because you could do every step necessary. You could be an Illinois resident, do every step necessary to be hired by an Indiana company, take your test in Indiana, do everything, take your drug test, and when they're waiting to determine whether they're going to hire you, they get the results of your drug test, so they call you at your house in Illinois and say, you passed your drug test, we're going to hire you. And that call is coming from Indiana. You're going to tell me that's an Illinois hire? If everything is done in Indiana. I'm sorry. Everything is done in Indiana. Everything is done in Indiana. Except they call him and he's in Illinois and tell him he's got the job. You're going to tell me that's an Illinois hire? Well, that's what the case law says. No, it doesn't. Well, last act necessary to form the contract is the call comes in to Illinois, so what do companies have to do now to avoid this? Tell the guy, come to Indiana, we'll tell you whether you've got a job. That's silly. Now, come on. Everything was done in Indiana. The man worked in Indiana, he filled out his papers in Indiana. I'm giving you an example where everything happens in Indiana. Training, everything. The only thing is that after they get the results of the drug test, they call the guy in Illinois and say, okay, you've got a job. And you're going to tell me that's an Illinois hire? Well, I think that's a little different situation than we have here. But the issue is they tell him, you have a job, except you have to take this training. No questions. No question. And the training takes place in Illinois. And if the completion of the training meant that he had a job and the offer is made at the time the training is completed, I'd agree with you. But the arbitrator found something and Prunell testified to that. The individuals who evaluate and conduct the training determine whether he passed or failed do not extend the offer. The offer was never extended in Illinois. It wasn't until they called Indiana that Prunell then picks up the phone and says, you've got a job, go pick up the truck. But that's the same discussion that you just had earlier where the receipt of the phone call shouldn't be determination of where the jurisdiction comes from. Why not? Because that's the last act necessary for him to get the job. It's for them, according to Prunell, he's got to receive the phone call telling him he passed. Then he gives him the job. But that's not the finding that the arbitrator made. Because, in fact, the individuals that conducted and evaluated the training and determined whether Klayman passed or failed did not extend an offer of employment to the Klayman. The Klayman called the facility in Indiana and spoke to Mr. Prunell. It was directed by Prunell to report to the terminal in Indiana. And Prunell testified that until he gets that call from Illinois telling him he passed that test, it doesn't give him a job. I believe Prunell's testimony is what I just read, which is the last act necessary. And I don't know how I can ask the question other to elicit the answer. What is the last act necessary? He didn't say, I have to receive a phone call and then direct them to Indiana and fill out some paperwork. He testified very clearly the last act necessary was the training and the successful completion of the training. Aside from that, Prunell admitted on cross, didn't he, that the Klayman was hired on December 3, 2002, correct? He did. 2002 was the date he passed the training, correct? December 3, 2002 was the date. And where was the Klayman at when he passed the training? Summit, Illinois. And where the results of that test were reported to the facility terminal in Indiana and then the offer of employment was then able to be extended to the Klayman? Well, the testimony. That's what he found. Well, the testimony is. Without that call, I can't hire him, right? No, the testimony is without the passing that he can't hire him. Well, wait a minute. He testified specifically that until he gets the call that the man passed, he won't give him the job. He's got to get a call from somebody. Prunell is the one that hires him. Prunell is only in Indiana. Prunell isn't in Illinois. Right. Prunell cannot know whether this guy passes a test until he gets a call from Illinois. And he's saying that call is then a hacker. And the reason why I disagree with your analysis there is because we don't know if it was a call, we don't know if it was a fax, we don't know if it was an e-mail. Would it make a difference? He doesn't remember how that takes place. Well, it didn't come by carrier pigeon. But we don't know. He may have been in that facility. He may have been here. We are assuming that everything is received in Indiana, but he doesn't recall any of that. I don't think that's what Prunell said. Prunell doesn't recall any of the facts and circumstances. The only thing that we have is the documents that we have from the respondent and his recollection of how that process goes. And so we don't have any specific indication of how they were notified. Well, the claimant testified he called the dispatcher. Absolutely. And said, I passed. And the dispatcher said, come in and pick up the keys. Prunell wasn't even involved before he started working. Right. According to the claimant. Right. And Prunell said, I don't remember any of it. Exactly. Here's how I usually do it, but I don't know how it happened this time. So there wasn't any call or facts or anything as far as we know. We don't have any evidence of that. Right. We have a process that is generally done, but we don't have anything specific that was done in this case. Could he have picked up that truck and gone to work for this employer, assuming his testimony is the one we're going to accept or the commission accepted, if he did not call the dispatcher and tell him he passed? And the answer to that is no. Could he? He could not have gotten that truck. If Indiana was not informed that he had passed that, by whatever means, he couldn't have gotten that truck. He couldn't have been hired. And so my question is, because you've got a situation here where virtually nothing happened in Illinois. This has no connection to Illinois whatsoever other than one driving test. And because our rates are much higher than Indiana's rates, we understand why he wants to make this in Illinois higher. But the question that I have is, really, ought we be doing this? If everything happens in Illinois and you're going to go to work for Indiana, well, then it's the Indiana rates that you should get. But that's not the situation that we have here. What we have here is we have a truck driver that drives throughout the country. Corticol just responded. They've already accepted the fact that they may be subject to jurisdiction here in Illinois. If this accident happens in Illinois, they're stuck. No question about it. I don't care if he was hired in West Virginia. If the accident happens in Illinois, they're stuck. And so to say that it's unfair to them, this is the law. This is what we have from the Coucher case. The Coucher case, we have the same situation. I'm hired here in Illinois. They call me. I call them up and say, I'm looking for a job. And they say, hey, your job search is over. We've got a job for you. But everyone agrees that to take that job, he has to pass a drug test in Indiana. And that's the last act necessary to take that drug test in Indiana. Respondent agrees, agrees that that's the last act. And the respondent agreed that that was the last act. And so this court said, well, that's the last act. It's in Indiana. You may have gotten an offer to be hired here in Illinois, and there's an employment contract here, but it's not completed until that drug test takes place in Indiana. So what you're saying is what was the last act necessary for the hire? It was the passing of the training in Illinois. In Illinois, it was where the last act took place, not where it was communicated to. Right. I mean, and that's the testimony that we have from respondents. And so we can speculate about a bunch of different things, but the only way I can elicit that testimony is to ask them, what was the last act necessary? And when they say it happens here and some in Illinois, then the court is required to say the test that we use is what is the last act. And that's not what was done by the arbitrator and the commission. What the arbitrator said is, clearly, with the exception of training regarding loading and loading tankers, the contract for hire was made in Illinois. Well, clearly, that's the wrong test. The issue isn't we're going to look at all of these things and ignore the last act that was done. You said the contract was made in Illinois? The contract for hire was made in Indiana. Excuse me, if I said it in Illinois, I apologize. So basically, your argument is the arbitrator used the wrong test under the law and used a totality of factors test, perhaps, instead of the last act. The majority of acts appears to be the standard that it was used, and that standard has been rejected by this court. And I think the College case is the case that we should be looking at and following because that's the one that tells us. It doesn't matter what happens before. It's that last act that we need to look at. And we don't have to look at, you know, the respondent now has come up with an argument, well, maybe there was a rehire or something like that. All of their documents, everything that they've submitted, indicates that December 3rd was when he was hired. And we have a series of documents that indicate. I don't even think that's an argument. I wouldn't even waste your time on that. The man picked up the truck on the 3rd. He went, he did delivery on the 3rd. He didn't do it gratuitously, and he didn't do it as an independent contractor. So he was obviously an employee that day. So what I would ask is that this Court apply a proper standard. The last act necessary was in Illinois. That's your argument. That's it. Thank you very much. Thank you, counsel. Counsel may respond. Thank you. Good morning, Your Honors. James A. Hauer on behalf of the defendant. Good morning, counsel. I think counsel made my argument, actually, when he was up here preceding me. I'd like to focus on your questioning regarding the last act necessary to give validity to the contract. I want to make one point first. Counsel's brief discusses the standard of review, and he places this as a de novo standard. And I respectfully submit that this is not de novo. He relies on the Mahoney case in which the key element is this. There was no dispute as to the key fact in that case. That individual was hired in Illinois. There was no statutory construction necessary in our case. The Court, preceding Your Honors, correctly interpreted and looked at and utilized sections 1B2 and 1B3 of the Illinois Workers' Compensation Act. That is the statute in effect. There is no disagreement here as to construction of that. The statute is clear when it states different factors necessary to establish jurisdiction in Illinois with employment. Everything that was discussed up here preceding me is a question of fact, and therefore I would submit that this is a manifest weight review. Can I ask you a question? Sure. If an individual goes to a company, and the company has a spot for a truck driver, and he says, I want that job as a truck driver. And they enter into a contract, and it says, we will hire you as a truck driver for $55 an hour, commencing on such and such a date. If you pass a drug test in Illinois next week, and this is done in Indiana, and the guy says, I accept, where is the contract the fire entered into? And the training or drug test you mentioned is in Illinois. Is in Illinois. But this contract is entered into between the two of them, this agreement, this offer and acceptance is done in Indiana. Where is the contract for hire? I would say and submit that in your scenario, Your Honor, that all the conditions necessary to give validity to the contract of employment, the last act necessary was, as you state, the drug test in Illinois. You really think so? I think the contract was entered into in Indiana. And if he passed that drug test in Indiana, and they didn't give him a job, he could sue them. Okay. Well, I think the facts are different here, though. What counsel is focusing on is one or two lines of testimony by Mr. Pruden. Actually, that was a softball. I fed you, but okay, go ahead. Well, Mr. Pruden's testimony upon counsel's questioning called for a legal conclusion. And he asked him, what's the last act necessary? Well, he's taking an event out of a chronology and stating that the last act necessary was the training in Illinois. That's the only thing that occurred in Illinois, as Your Honor pointed out. We understand that. That doesn't make any difference. I agree. The question is, where was the contract entered into? All parties agreed that the contract was entered into in Indiana in this case when, in terms of simple contract law, offer acceptance consideration. In your scenario, you had already pinpointed the dollar amount, things of that sort. Mr. Campbell did not come to a meeting of the minds on all these issues in a contract until he showed up in Indiana. He went there. Mr. Pruden was never in Illinois, or at least there's no evidence to suggest he was in Illinois. Everything occurred in Indiana. That's what the evidence suggests. You're wrong. That's what the evidence gives me. One second. I just want to correct something. You're wrong. This man didn't agree on the price or the change of the price until after he had already taken a load. This guy was their employee long before that ever happened. He was their employee on the 3rd of December, not the 6th. So my question is, is the training in Indiana a condition preceding to the formation of a contract, or is it only an element of a contract? And so in the case that I gave you, that contract was entered into in Indiana. In this particular case, the argument could be made there is no contract because there's no offer until he goes to Illinois and does what he's supposed to do. That's entirely different. Well, I would, I would. I'm sorry to interrupt. No, go ahead. I would just beg to differ because the offer and the parties stipulate, well, stipulated, testified to that the contract was entered into on December 3rd. Whether you say it was December 3rd or December 6th, and it's unclear because the testimony is very ambiguous as to whether or not he did take a load on December 3rd and then come back Who would have had a record of whether he took that load or not? Well, it would have been the respondent, the employer. Did the respondent introduce any records one way or the other? We did not have any records. Was there anything that contradicted his testimony that he took that load? No, there was nothing that I saw within the record that I believe Mr. Pruitt testified to. Can't we assume then that the respondent's records probably verified that he did take a load? Well, either way, if that is true, everything that occurred to finalize and give validity to the employment contract occurred in Indiana. I understand that's not the end of your argument, but I mean on the issue of whether or not he actually took a load on the 3rd. What does taking a load, excuse me, I don't know, have to do with any of the law of where the last act necessary to give the contract validity occurs? If you have a contract that is contingent on the occurrence of an event, in this case the training, right, there can't be no contract by the admission of everyone until the training is completed. Does anybody dispute that? No, but that is not the last act. Well, okay. In the mind of the company and the operations manager that was the last act, as I said, he was hired when he passed the test. The last act, contingent on him hiring, he could not have been hired until he passed the training. The training took place, he passed it on December 3rd in Illinois, correct? Well, I don't think the record is clear that that actually occurred on December 3rd in Illinois, the training. But he did go and end up in Indiana and pick his truck. Excuse me, where did the training take place then? The training took place in Summit, Illinois. That's Illinois, right? Pardon me? That's Illinois, right? Correct. And you don't know when he passed the training. There's no evidence of that in this record? The testimony is that by both parties that that training occurred somewhere between November 25th, 2002 and December 3rd, 2002. And then he shows up in Indiana. What did he testify to? He testified that as soon as he passed the test on December 3rd while he was still in Summit, Illinois, he informed them by phone that he had passed the test and they said come and get a truck. So we know when they were informed. He testified to it. There's no contradictory testimony that they were informed on December 3rd. And he picked up his truck on December 3rd. This guy was hired on December 3rd. There's no question about that. Correct. And Pruden said that as well. Correct. And I would submit to you, as Your Honor asked previously, that that phone call, everything occurred in Indiana. Well, his testimony was he informed the dispatcher. Correct. The dispatcher wasn't the person who hired or fired, right? Correct. All he was doing was saying I passed the test. Exactly. And the guy knew what to do. He said come and get a load. And as a finding of fact, the arbitrator concluded that the individuals that conducted and evaluated the training and determined whether Petitioner passed or failed that training did not extend an offer of employment to the Petitioner. That was not Mr. Pruden who was involved in that pass-fail. Yeah, we don't know what Pruden did. He doesn't know what he did involved in this. As far as we know, he wasn't even in the loop after he passed the training. He just called the dispatcher and said I passed. The dispatcher said go to work, which kind of lends credence to the idea that the last thing that had to happen was pass the training, and he's hired. No, because he had to show up in Indiana and negotiate his employment contract. No, no. That's right. When did that happen? The 6th? Well, he appeared on the 3rd, obviously, and picked up a load, according to the record. What's the compensation contract he negotiated on the 3rd? Well, and then he comes back with a load, as you point out, on the 6th. The 6th. And actually, if you look at the documents, too, there are some dated December 3rd and some dated December 6th. And he comes back and points to records that were signed by him on December 3rd with 22 percent on it and says, wait a minute, I thought I was getting 23. Are you telling me that assuming that he picked up a load and you have a contract that evidence and he gets in an accident in Nebraska, you're going to say he wasn't hired? He wasn't hired? He's a thief? That's what you're saying. That's exactly what you're saying. No, what we're talking about here is jurisdiction. That's a legal liability. You can't hedge on this one. Either he was their employee on the 3rd or the 1st. One or the other. When did he become their employee? On December 3rd. Okay. So he's their employee. So all this business about talking about wages on the 6th and all the rest of it had nothing to do with when he became their employee. Now the question is, where was the last act necessary for that contract of employment? Where did it occur? In Indiana. And as you pointed out, it was after Mr. Pruden, who was in charge of hiring, received notification, whether it was fax, e-mail, that this gentleman had passed his safety training for quality trucking. Quality trucking had that prerequisite. And then once that information was conveyed to Mr. Pruden in Indiana, he then had the ability to hire an individual who passed. So you're saying the communication to him, because it was received in Indiana, controls not where the act that allowed him to get the job was done. I'm sorry, Your Honor. You're saying because the communication went to Indiana, that's the last act? No, I'm not saying that was the last act. I'm saying there was a lot more that had to occur before the contract of employment was entered into it. What about this hypothetical? And tell me if this is analogous. You have an Indiana law firm, an Illinois law student. Indiana law firm negotiates with the law student for a hire and says it's contingent upon you passing the bar exam. The Illinois law student studies and takes the bar exam in Illinois, calls the Indiana law firm to inform them that he has passed the bar. Is that an Indiana hire or is that an Illinois hire? I would say that that's an Indiana hire. Why? It's similar to what transpired here. Well, I mean, pretty clearly, under the case law, it's wherever the last act occurs to complete the contract of hire. Exactly. And why wouldn't passing the Illinois bar exam be the last act that occurred? Well, in Your Honor's hypothetical, there weren't a lot of facts. It was just, you know, go ahead and pass the bar exam, which is training necessary for everyone to become an attorney. Training and pass the bar exam, which is training like driving the truck. The offer of employment, then, is extended in Indiana and the site of the contract of hire and the employment is in Indiana. Does it make any difference that there is a condition subsequent to the enforcement of a contract? Does that affect the question of whether a contract has been entered into? Well, the Calgar case does talk about the simple contract law elements of offer acceptance and consideration. So if you have offer acceptance, consideration, and the contract is, though, subject by its terms to a condition subsequent, then in that particular case, the contract has already been entered into. If the condition subsequent is not fulfilled, the contract is unenforceable. Is that a proper interpretation or is it not? Well, yes, although the standard here is the last act necessary to give validity to the contract. Ah, validity of the contract is different than the formation of the contract. Correct. So in other words, if there is a condition subsequent to be performed elsewhere, then it must be performed before the contract has reached validity. Correct. Validity is different than formation. And I believe that that is the standard as espoused by the court in Calgar. So in that particular case, the last thing necessary, the condition subsequent to him going to work would be completing the training in Summit. No. Because that's the condition subsequent. No, the condition subsequent is the negotiation of the employment contract, the showing up in Indiana, all those factors that That never happened until after he was already the employee. I'm sorry? That never happened until after he was an employee. That happened on the 6th. Well, I think that's debatable. Your time is up. All right, thank you. You've got a little over a minute there. Okay. Thank you. Counsel, you may reply. Just to touch on something briefly, I think you had raised earlier, Justice, about the fairness associated with policy. Fairness. I raised it as a policy issue. It doesn't enter into this. I think Respondent really had the ability to control where this contract was formed, where the validity of the contract was. They could have sent him for tanker training and then said, well, now you've got to pass a background check and you've got to do a drug test and you've got to do all this in Indiana. So if they're smart, they reverse the order. They send him to training first and bring him back to Indiana for the drug test and then they've got it cleaned. They certainly could have. That's it. They don't have any Illinois hires. They certainly could have done that. They didn't do that because of a financial consideration. Or because they're not lawyers and they didn't know anything about Illinois law. Well, I think it was more realistic. I think there was a financial consideration for it. They didn't want to pay for the additional training. And so I think that's what we find ourselves on. It could be as simple as we don't walk around the truck, check the flares, shift it through the gears in Indiana. The act. Sure. I mean, it could be a non-expensive requirement. Absolutely. Absolutely. Unless there's any other questions, I don't have anything for you. No. Thank you. I don't think so. Thank you. Counsel, thank you all for your arguments in this matter. I will be taking your advisement and a written disposition will issue. Thank you. Please call the next case.